PRUDENTIAL INSURANCE COMPANY, APPELLANT, V. CENTRAL NEBRASKA PUBLIC POWER AND IRRIGATION DISTRICT, APPELLEE.

296 N. W. 752

FILED FEBRUARY 28, 1941. No. 30931.

*Wilber S. Aten, Harold M. Peyton* and *Joseph H. Sauer,* for appellant.

*Ralph O. Canaday* and *Paul E. Boslaugh, contra.*

Heard before SIMMONS, C. J., EBERLY, PAINE, MESSMORE and YEAGER, JJ., and LANDIS, District Judge.

SIMMONS, C. J.

Defendant is a public corporation, organized under the provisions of sections 70-701 to 70-719, Comp. St. Supp. 1939. Among other things, it has power to make appropriation of public waters, to borrow money, to construct, own and operate irrigation works, to sell water to those landowners within the area served by its distribution system, to charge a "nondiscriminatory" rate for the same, and to use and pledge its revenues for the payment of its debts. It has no power of taxation. Its relations with the landowners, who are its potential customers for water, is one of contract of sale and purchase. As to them, it is a public utility with a commodity, to wit, water, which it proposes to sell. Its main canal and distribution system are partially completed. Its storage reservoir is in process of construction. The irrigable land within the area of its distribution system is approximately 200,000 acres. It confidently expects to be able presently to sell and deliver water in sufficient quantity to the owners of said lands to meet irrigation water needs.

Exercising its power of eminent domain, it entered upon plaintiff's land (a square 160-acre tract) and appropriated a right of way diagonally across the same for a main lateral. This lateral has been constructed.

Plaintiff seeks to recover its damages. There is no question raised as to the liability of the defendant to pay for the land actually taken, and to pay damages, if any, accruing to the land not taken; nor is the trial procedure or jury's verdict questioned in that regard.

The principal question presented arises from the following situation. The evidence is uncontradicted that the benefit to the irrigable area of plaintiff's land, acre for acre, is the same as that to all other lands susceptible to irrigation from defendant's system.

The trial court instructed the jury that special benefits

were those "accruing to the land by reason of the construction and maintenance of the ditch for the purpose of irrigation," and instructed the jury to set off, against the amount of consequential damages to the lands not taken, the special benefits, if any, "accruing to the land by reason of the construction of the lateral and the irrigation system of which it is a part and the bringing of water to this land so that the landowner has because thereof, and did not have before, the ability and opportunity to any extent * * * to apply the water from said canal to the useful purposes of irrigation to a material part of the land."

Defendant in its brief states "the only special benefit to be derived from a system of irrigation is the benefit accruing by reason of the availability of water for irrigation of the land tributary to the system," and claims that it has benefited plaintiff's land in that water will be and is available to irrigate at least 106 acres thereof which is adaptable to irrigation, and that the water, if used, will increase the production of the land, and that that availability of water has increased the value of said land.

The question is: Is that increased value, if any, a special benefit which may be set off as against consequential damages or is it a general benefit which may not be so deducted? For "This court has held that there are two elements of damage involved in a case of this character: First, the market value of the land actually appropriated; and second, damages suffered by diminution in value of the remainder of the land, less special benefits received." *Stull v. Department of Roads and Irrigation,* 129 Neb. 822, 263 N. W. 148.

We conclude that this benefit is a general benefit, not deductible from the consequential damage, and that the trial court erred in his instructions to the jury.

A well-recognized authority states: "Upon the question as to whether or not the benefits arising from the proposed improvement, for which the right of way is sought, may be charged against the landowner, * * * the authorities do not agree. *Upon principle, we do not think that they should be*

*so charged against him."* (Emphasis supplied.) 2 Kinney, Irrigation and Water Rights (2d ed.) 1943.

Discussion as to what constitutes general and special benefits may be found in 20 C. J. 822; 18 Am. Jur. 942, sec. 298; 2 Lewis, Eminent Domain (3d ed.) 1198 *et seq.*; 2 Kinney, Irrigation and Water Rights (2d ed.) 1938 *et seq.*; 4 Sutherland, Damages (4th ed.) pp. 4106 to 4124; 2 Nichols, Eminent Domain (2d ed.) 764 *et seq.*; 2 Elliott, Railroads (3d ed.) 822; 3 Sedgwick, Damages (9th ed.) 2297 *et seq.* A large number of adjudicated cases in support are cited in the texts, but not discussed here.

The difficulty in applying many of the rules comes from the use of the words "general public," "community at large," and other similar expressions in the texts and cases defining general benefits. Defendant argues that only the irrigable land is benefited by the availability of water, and that therefore the "community" and "general public" are not benefited as a whole, and that therefore the benefit in question is not a general benefit. It must be remembered that we are dealing with *one benefit,* to wit, the potential availability of water for irrigation of all irrigable lands (including plaintiff's) within the area of defendant's system. Is that a general or a special benefit? To determine that question we must limit the inquiry to the land claimed to be benefited, to wit, irrigable land. The "general public," "community at large," and other similar expressions must therefore, for the purposes of this case, be held to be the equivalent of all irrigable areas brought within the probability of irrigation by defendant's project. The benefits to plaintiff's irrigable land must be compared, not with all other land, but with all other *irrigable* land within the area of defendant's utility. *"General* benefits (are) such as are bestowed upon other lands of *similar character* in the same vicinity." 2 Elliott, Railroads. (3d ed.) 823.

"Few general rules can be laid down for ascertaining whether or not a given benefit is general or special; the question must be determined largely by the circumstances of the particular case." 20 C. J. 822.

It can more easily be determined as to what are special benefits and general benefits if we inquire: What are the reasons for the rule that general benefits may not be deducted and special benefits may be deducted from consequential damages?

Why are general benefits not deducted? "General benefits * * * may never be realized, and, if they are, it is unjust that one person should be obliged to pay for them by a contribution of property while his neighbor whose property is not taken enjoys the same advantages without price." 2 Lewis, Eminent Domain (3d ed.) 1198. See 18 Am. Jur. 944, sec. 299; *Chicago, K. & N. R. Co. v. Wiebe*, 25 Neb. 542, 41 N. W. 297; 3 Sedgwick, Damages (9th ed.) 2299.

In discussing why general benefits are not deducted from consequential damages (3 Sedgwick, Damages (9th ed.) 2299) the author points out that the landowner is given damages for the taking or injury of his property. "But the taking or injury does not of itself produce these advantages, because they are in general *shared equally by those in the neighborhood whose land is neither injured nor taken."* (Emphasis the author's.)

If defendant's contention is sustained, then plaintiff will be compelled to pay for benefits to its irrigable land for which other owners of irrigable lands are *not* required to pay.

Why are special benefits deducted? The authorities clearly establish that one of the reasons is that those benefits are a *kind* of benefit that has been brought to and affect the particular piece of land that is not shared in by all other land within the range of the public improvement and that the landowner should pay, by a reduction in his damages, for that special benefit. 18 Am. Jur. 942, sec. 298; 2 Nichols, Eminent Domain (2d ed.) 767; 2 Elliott, Railroads (3d ed.) 822; 4 Sutherland, Damages (4th ed.) 4106. "In order that benefits may be set off against the * * * damage to that injured in making an improvement * * * they must be special or local or such as result directly and peculiarly to the particular tract of which a part is taken."

20 C. J. 822. See, also, 2 Farnam, Water and Water Rights, 1068; 4 Sutherland, Damages (4th ed.) 4106; 3 Sedgwick, Damages (9th ed.) 2299; *City of Omaha v. Schaller,* 26 Neb. 522, 42 N. W. 721.

It is noted that some of the texts make the distinction between general and special benefits turn upon a difference *in kind* of benefit, rather than *degree.* Others make the distinction turn upon the question whether a benefit is *peculiar* to the particular land involved. The rules, when analyzed, mean the same thing, for a benefit peculiar to one or more pieces of land out of the whole is obviously a benefit differing in *kind* from that which all pieces may receive.

What *kind* of a benefit has the plaintiff's irrigable land received by the construction of this irrigation system and the probability of the availability of water that has not been received by all the irrigable land within the area of service from defendant's utility? All of said lands have the "same ability and opportunity * * * to apply water from said canal to the useful purpose of irrigation" as does the plaintiff's land. Measured by this test, the benefit to plaintiff's land is the same in kind as that that accrues to all the other irrigable land.

So far as the benefit is concerned, which may accrue to lands by virtue of the commodity which defendant proposes to sell, to wit, *water,* that benefit is the same to all lands not only *in kind* but *in degree.* All water is wet, and, if of equal quantity, it is of equal wetness. The unknown quantity in irrigation is not in the water, but in the quality of the soil, the method of handling both the water and land, the time of application, the crops to which it is applied, etc. Water, if brought to the plaintiff's land, will be of benefit, but that benefit, as water, will be no different than water delivered to any other land.

Other tests suggested by the authorities may be applied:

(1) "Benefits of two kinds may accrue to lands bounding on a way laid out, altered or widened: First, the special and direct benefit arising from its position upon the way itself; and second, the general benefit, not arising from such

location, but from the facilities and advantages caused by the way which affect all the estates in the neighborhood equally and which are shared in common with such estates." 4 Sutherland, Damages (4th ed.) 4114. Plaintiff now has two pieces of land lying on either side of "a way" (irrigation lateral) laid out across his land. Does plaintiff's land receive any special and direct benefit arising from its position on the lateral itself? The answer must be that it does not. The evidence discloses that plaintiff's land may receive the same quantity of water for the same price and under the same conditions as the other irrigable lands. The opportunity to so receive the water does not arise by virtue of the land being along the way of the lateral "but from the facilities and advantages" caused by the irrigation system which are shared in common by all the irrigable land.

(2) "The most satisfactory distinction between general and special benefits is that general benefits are those which arise from the fulfilment of the public object which justified the taking, and special benefits are those which arise from the peculiar relation of the land in question to the public improvement. * * * In other words the general benefits are those which result from the enjoyment of the facilities provided by the new public work and from the increased general prosperity resulting from such enjoyment. The special benefits are ordinarily merely incidental and may result from physical changes in the land, from proximity to a desirable object, or in various other ways." 2 Nichols, Eminent Domain (2d ed.) 765.

Applying the test suggested by Nichols, *supra,* to the benefits claimed by defendant to be conferred upon plaintiff's land, it is obvious that they are general benefits, for surely they are those "which result from the enjoyment of the facilities provided by the new public work and from the increased general prosperity resulting from such enjoyment."

(3) "A benefit may be special in respect to particular property although such benefit is shared by other property in the vicinity, as in the laying out or widening of a high-

way. But it has been held that to render a benefit special under such circumstances the different tracts must occupy a *peculiar* situation with reference to the improvement; *if the benefit attaches to all the lands in the neighborhood without regard to their situation with reference to the improvement, it is general and cannot be deducted.*" (Emphasis supplied.) 20 C. J. 824.

It is patent that plaintiff's land does not "occupy a peculiar situation with reference to the improvement," and that the same benefit attaches to every acre of land capable of being irrigated from defendant's system. The benefit is therefore "general and cannot be deducted."

Both plaintiff and defendant have cited many texts and decided cases to support their contentions. They have all been reviewed, together with many discovered by independent research. Space does not permit reference to all of them.

Plaintiff cites *Riddle v. Lodi Telephone Co.*, 175 Wis. 360, 185 N. W. 182. There the question arose as to the correct rule as to the measure of damages where a telephone company brought condemnation proceedings to acquire the right to erect and maintain a telephone line in front of the farm premises owned by the plaintiff. The language of that court is quoted, and in parenthesis are inserted the necessary factual changes to make it applicable to the present controversy. "The land of the plaintiff upon which the telephone line (irrigation lateral) is situated is no more accessible to the telephone line (irrigation lateral) than the land on the opposite side of the highway (contiguous to it on either side), which sustains no burden by reason of the erection of the telephone line (irrigation lateral). Accessibility to the line (lateral) is a general benefit which accrues to the owners of all property served by the telephone (irrigation) system and is not a special benefit to the lands of the plaintiff." No comment is necessary.

Plaintiff relies strongly on *Regouby v. Dawson County Irrigation Co.*, 126 Neb. 711, 254 N. W. 389, wherein this court said (page 718) : "* * * in no case are general benefits,

such as accrue to other lands in the vicinity as well as the land in question, properly allowable as offsets against special damages. * * * Testimony was allowed on the part of the defendant to the effect that plaintiff's land was greatly increased in value because of its adaptability, along with other lands, for irrigation purposes. The court refused any special damages to the plaintiff, upon the apparent theory that the general benefits, not only to plaintiff's land, but also to other lands along the irrigation project, increased, rather than diminished, the value of plaintiff's land, and thus allowed such general benefits to be offset against special damages. In failing to apply this well-settled rule of damages to the facts, the court committed error." (Page 720) : "No offset against plaintiff's special damages should have been allowed for general benefits to the land in question which are enjoyed by all the irrigable land tributary to the canal." Defendant contends that the *Regouby* case was poorly considered and is unsound. A review of the authorities supports the holding made in the above decision.

Defendant relies upon and calls particular attention to the case of *Stocker v. Nemaha Valley Drainage District,* 99 Neb. 38, 154 N. W. 862. An examination of the briefs in that case indicates that the trial court took the position that all the benefits were special, for he instructed the jury that, "If the residue of the plaintiff's land has not been depreciated, but would sell on the market for as much, or more, than the same land would have sold for, prior to the construction of the ditch, the plaintiff has suffered no consequential damages." Such an instruction can only be justified on the basis that there were no general benefits to be excluded. The appellee's brief in that case states: "There was no question of general benefits in the case. * * * The benefits and damages inquired about were the benefits and damages sustained by the particular land involved in the lawsuit." This court was there considering a case of special benefits only. The decision defined special benefits derived from drainage and compared those special benefits, which were conferred upon the particular property involved, with

general benefits which the public (not necessarily property owners) received. The decision in the *Stocker* case is consistent with the conclusion herein reached.

The defendant cites as directly in point the case of *Gallatin Canal Co. v. Lay,* 10 Mont. 528, 26 Pac. 1001, wherein the court said: "Evidence as to all damages is competent, and evidence as to all benefits is competent." That statement was made in considering a contention that a "witness must not speak of damages, unless, in the same utterance, he tells what he knows of the benefits" and that "what the damage is * * * must be a balance after deducting the benefits." The court was not considering what constituted general or special benefits, for "not a witness testified that the canal was a benefit in any sum whatever." The case is not in point.

True, as defendant contends (citing *Stocker v. Nemaha Drainage District, supra*), it may not be possible to secure exact justice in a matter of this kind. Courts should reach for the goal of exact justice. Where the application of one rule will tend toward injustice, and another rule tend toward justice, the rule that enforces the latter result should be followed. Injustice to plaintiff and other landowners similarly situated can be prevented by declaring this benefit to be, what in fact it is, a general benefit.

Defendant contends that the plaintiff waived any error in the consideration of evidence of the benefits of irrigation where it, in its case in chief, offered evidence of the extent to which the land in question was irrigable. This contention is without merit. Plaintiff was entitled to show the market value of its land at the time of the taking and to show the elements upon which the evidence of value is based. The potential availability of water for irrigation is an element that might enter into that value. If so, it is important to show the number of acres irrigable. If there was an appreciation in the value of plaintiff's land, at the time of the taking, resulting from the general expectation of the construction and successful operation of defendant's irrigation system, plaintiff, as owner, was entitled to the benefit of that appreciation. 1 Nichols, Eminent Domain (2d

ed.) 675; 18 Am. Jur. 884, sec. 246; *Lowe v. City of Omaha,* 33 Neb. 587, 50 N. W. 760. The plaintiff did not invite the erroneous instructions by the offering of such evidence.

It follows that the trial court erred in permitting the jury to deduct benefits, accruing by reason of the potential availability of water for irrigation of plaintiff's land, from the consequential damages caused by defendant's taking.

The judgment is therefore reversed and the cause remanded for further proceedings.

REVERSED.